## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAY ANDERSON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOWE'S HOME CENTERS, LLC, | : | No. 21-2292 |
| Defendant. | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                                            **June 14, 2022**

Presently before the Court is Defendant Lowe's Home Centers, LLC ("Lowe's") Motion for Summary Judgment. Lowe's moves for summary judgment on all four counts of Plaintiff Ray Anderson's Complaint. Count One asserts a claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964; Count Two asserts claims of failure to accommodate and hostile work environment in violation of the Americans with Disabilities Act ("ADA"); Count Three asserts a claim of retaliation in violation of the Family and Medical Leave Act ("FMLA"); and Count Four asserts several violations of the Pennsylvania Human Relations Act ("PHRA"). For the reasons that follow, the Court will grant Lowe's motion in part and deny it in part. Specifically, the Court will grant summary judgment as to Counts One and Three, and it will grant summary judgment in part and deny summary judgment in part as to Counts Two and Four.

### I.      BACKGROUND

#### A.      Anderson's Employment with Lowe's

Lowe's is a home improvement company that operates a chain of retail stores throughout the United States. (Def.'s Statement of Undisputed Material Facts [Def.'s SUMF] ¶ 1.) Anderson is a Black man whom Lowe's hired as an Assistant Store Manager ("ASM") in April 2006. (*Id.* ¶ 9.) ASMs supervise and lead teams of associates working in sales, operations, and customer

service. (*Id.* ¶ 11.) Anderson was initially assigned to a Lowe's store in Langhorne, Pennsylvania. (*Id.* ¶ 10.) In 2012, Anderson transferred to Lowe's West Philadelphia, Pennsylvania location ("Store 2378"). (*Id.* ¶ 12.)

Store Manager Ebony Wheeler became Anderson's supervisor in 2018. (*Id.* ¶ 14.) Wheeler is Black. (*Id.*) Wheeler reported to District Manager Earika Khan, who is also Black. (*Id.* ¶ 16.) Khan reported to Regional Manager Tom Wilson, who is White. (*Id.* ¶ 17.) As Regional Manager, Wilson oversaw the operations of approximately sixty-four stores, including Store 2378. (*Id.* ¶ 18.)

Wilson sometimes expressed concerns about Store 2378, particularly regarding its appearance and the ability of its management to ensure that it was operationally sound. (*Id.* ¶ 20; Deposition of Ray Anderson [Anderson Dep.] at 32, 39-44.) Wilson sometimes performed check-ins at Store 2378, and Anderson testified that Wilson would treat him coldly when he visited, though they only interacted three times and never had a full conversation. (*Id.* at 45-47, 61.) Wilson did not supervise Anderson directly, assess Anderson's performance, or play a role in any discipline he received. (Def.'s SUMF ¶ 22.) Wilson also never made any disparaging comments about race to or around Anderson. (*Id.* ¶ 23.)

Store 2378 is considered to be a challenging and stressful Lowe's location with a high employee turnover rate. (*Id.* ¶ 13; Anderson Dep. at 165-67.) Anderson personally experienced "life-threatening" interactions with customers, including "physical altercations," "carjacking," and "theft," due to the store's location in its "particular area" in inner-city Philadelphia. (Anderson Dep. at 19-24.) In 2018, Anderson began experiencing intense, work-related nightmares rooted in several "high stress," "volatile," and "uncertain" situations at Store 2378, stemming from both violent patrons and Anderson's significant workload. (*Id.* at 17-21, 24-26, 165.)

At some point in spring 2018, Anderson applied to transfer to a Lowe's location in

Wilmington, Delaware. (*Id.* at 235.) Anderson was told by the Wilmington location's store manager that he wanted to offer Anderson a position, but he was unable to do so because Wheeler and Khan had informed him that Anderson was ineligible due to a "performance issue." (*Id.* at 234-36.) Anderson replied that he did not know about or have any documentation of performance issues, but he aborted his attempt to transfer. (*Id.* at 236.)

### B.    Anderson's FMLA Leave and Transfer Request

Wheeler provided Anderson with his 2018 performance evaluation at an April 2019 conference. (Def.'s SUMF ¶ 27; Def.'s Ex. 9.) Wheeler rated Anderson's 2018 performance as "inconsistent," which is considered to be a less-than-satisfactory rating. (Def.'s SUMF ¶ 28; Def.'s Ex. 9 at 3.) Anderson did not disagree with the evaluation. (Def.'s SUMF ¶ 31.)

In May 2019, Wheeler left Store 2378 and Janeen De Villava assumed the role of Store Manager and, accordingly, became Anderson's supervisor.[1] (*Id.* ¶¶ 32-33.) Also in May 2019, Anderson filed an internal complaint against Khan, citing her purported obstruction of Anderson's transfer to Wilmington, as well as a 2018 altercation between the two regarding Khan's comments toward another employee. (Anderson Dep. at 169-75, 233-36, 252-54.) Anderson also requested that he be transferred out of Khan's market. (*Id.* at 261.)

In mid-May 2019, because of the intensity and impact of his stress and nightmares, Lowe's referred Anderson to a psychiatrist, who diagnosed him with anxiety and prescribed him medication. (Def.'s SUMF ¶ 40; Anderson Dep. at 69-70, 357-60.) On May 29, 2019, Anderson submitted a request for FMLA leave to Lowe's third-party benefits administrator. (Def.'s SUMF ¶ 35.) He swiftly received approval for leave and took it immediately thereafter. (*Id.* ¶ 37.) Wilson

---

[1] Anderson testified that he does not "know a hundred percent" what De Villava's race is, but "if someone on the outside would just look at [him and De Villava], they would say [he] was Black and they would say she was White." (Anderson Dep. at 386.)

was not involved in the leave approval process. (Anderson Dep. at 48.) Khan left Lowe's days after Anderson went on FMLA leave. (*Id.* at 162.)

Anderson returned to work full-time on July 29, 2019, reinstated at his same ASM position with no restrictions. (Def.'s SUMF ¶¶ 38-39.) He did not receive any pushback from Lowe's regarding his use of FMLA leave or the length of his leave. (*Id.* ¶¶ 46-47.)

At some point after he returned from leave, Anderson asked De Villava and Brandon Gurk, a human resources manager, if he could transfer to another store location. (*Id.* ¶ 49.) He told them that his transfer request was "stress-related" and due to Store 2378's environment "taking a toll on [him] [] from an emotional standpoint." (Anderson Dep. at 269-70.) He also volunteered to accept a demotion if it would allow him to work at a store in New Jersey, where he lived. (Def.'s SUMF ¶ 50.) His transfer request was denied. (Anderson Dep. at 277-79.) In denying his request, Gurk cited Anderson's 2018 evaluation and certain issues concerning Anderson's work at the store's garden center. (*Id.* at 279-81.) Anderson testified that he is not aware if Lowe's consulted with Wilson when reviewing and ultimately denying his transfer request. (*Id.* at 327-28.)

On August 19, 2019, De Villava and Christian Coy, a human resources advisor, placed Anderson on a ninety-day performance improvement plan ("PIP"). (Def.'s Ex. 19; Def.'s SUMF ¶ 61.) Lowe's Employment Policy states that employees who "are on a written warning as part of corrective action within the last six (6) months" or "on a [PIP] . . . . may be ineligible for consideration" for other internal positions, including transfers. (Def.'s Ex. 5.) Anderson was aware that he may have been ineligible for a transfer given his placement on a PIP, (Anderson Dep. at 144), but knew that the decision to consider an employee's transfer request, even if the employee were on a PIP, ultimately rested within management's discretion. (Def.'s Ex. 5; Pl's Statement of Disputed Facts [Pl.'s SDF] ¶ 52.) Anderson testified that he is not aware if De Villava or anyone

4

at Lowe's discussed the decision to place him on a PIP with Wilson, and that he did not know whether Wilson knew that Anderson was placed on a PIP at all. (Anderson Dep. 302-03.)

## C.   Other Lowe's Employees' Transfers

Other Lowe's employees were able to transfer from Store 2378 around the time Anderson's request was denied. On September 15, 2018, ASM Geoffrey Pratta transferred from Store 2378 to another Philadelphia location. (Def.'s SUMF ¶ 58.) Pratta received a rating of "solid performance" in his 2018 evaluation and was not on a PIP at the time of his transfer. (*Id.*) Pratta is White. (Anderson Dep. at 107-08.)

On October 6, 2018, ASM Christopher Derle transferred from Store 2378 to a Havertown, Pennsylvania location. (Def.'s SUMF ¶ 57.) Derle received a rating of "solid performance" in his 2018 evaluation and was not on a PIP at the time of his transfer. (*Id.*) Derle is White. (Anderson Dep. at 379.)

On December 8, 2018, ASM Eric Goos transferred from Store 2378 to another Philadelphia location. (*Id.* ¶ 59.) Goos received a rating of "leading performance" in his 2018 evaluation and was not on a PIP at the time of his transfer. (Def.'s Ex. 14.) Goos is White. (Anderson Dep. at 376.)

Approximately one month prior to Anderson's FMLA leave, in mid-2019, ASM Ronaldo Brown transferred from Store 2378. (Def.'s SUMF ¶¶ 55-56.) Brown was not on a PIP at the time of his transfer and was considered a "strong performer."[2] (*Id.* ¶ 55.) Brown is Black. (*Id.*)

In September 2020, ASM Todd Kelly transferred from Store 2378 to a Sicklerville, New Jersey location. (*Id.* ¶ 60.) Kelly received a rating of "meets expectations" in his 2019 performance

---

[2] The location to which Brown transferred was not provided to the Court. Brown's 2018 evaluation was also not provided to the Court. He received a rating of "meets expectations" in his 2019 performance evaluation. (Def.'s Ex. 11.)

evaluation and was not on a PIP at the time of his transfer. (*Id.*) Kelly is White. (Anderson Dep. at 378.)

### D.    Anderson's Internal Complaints

On September 2, 2019, Anderson filed an internal complaint against De Villava and Gurk alleging that his transfer request was denied because of his race and in retaliation for the May 2019 internal complaint he made against Khan. (Def.'s SUMF ¶ 67; Def.'s Ex. 16.) Lowe's investigated Anderson's allegations. (Def.'s Ex. 16.) The investigator's report stated that Anderson was asked "[w]ho is discriminating against" him and Anderson "[c]ould not identify" any specific person. (*Id.* at 5.) Anderson told the investigator that he believed that, of his coworkers whom Lowe's allowed to transfer, "all . . . were Caucasian. I'm the only one of African American ethnicity [] whom they will not allow to transfer." (*Id.*) He stated that "he doesn't want to be at [Store 2378]" because it is in a "[h]igh stress/violent area." (*Id.*) Anderson also told the investigator that De Villava had made him aware of his performance deficits before he went on FMLA leave, warning that "there would be accountability" if he did not improve. (Def.'s SUMF ¶ 70.) De Villava similarly told an investigator that Anderson "was already going to be placed on a PIP before he went on FMLA" because she and her predecessors observed numerous performance issues, including those concerning his tardiness and inability to properly close the store. (Def.'s Ex. 16 at 4.)

An investigator also spoke to Wheeler, who attributed any deficits in Anderson's performance to him working at a "challenging store." (*Id.* at 7.) She told the investigator that Khan "didn't think [Anderson] was improving fast enough but the store didn't have the resources they needed," citing to staff absenteeism and Store 2378's high turnover rate. (*Id.*) She stated that Anderson "did a 180" in his performance once he "got to know [Wheeler] and learned to trust

[Wheeler]." (*Id.*) Lowe's ultimately found no wrongdoing on the part of De Villava or Gurk. (*Id.* at 1-3.)

In October 2019, De Villava offered Anderson the ability to take a voluntary demotion and transfer to Lowe's Aramingo store in Philadelphia. (Def.'s SUMF ¶ 72.) Anderson denied the opportunity because the Aramingo store was located in another high-risk area in inner-city Philadelphia, presenting many of the same problems that plagued Store 2378 and, resultantly, caused his anxiety and nightmares. (*Id.* ¶ 73; Anderson Dep. at 373-74.) Anderson was also concerned about his ability to pay gas and tolls to drive from his home in New Jersey to Philadelphia should he take a demotion and accept the ensuing pay cut. (Anderson Dep. at 276.)

On November 12, 2019, De Villava extended Anderson's PIP for another thirty days. (Def.'s SUMF ¶ 78.) On December 3, 2019, Anderson submitted another internal complaint wherein he alleged that he was placed on a PIP in retaliation for his FMLA leave. (Def.'s Ex. 17.) Anderson told an investigator that he "does not agree with" his PIP extension and "feels that it was 100% done to performance him out of his position." (*Id.* at 2.) De Villava told an investigator that she believes that Anderson has an "ax to grind" because of his previous "transfer issues" and that he "was so angry at [Khan and Gurk] and [kept] harboring that against people who are no longer [at Store 2378]." (*Id.* at 5-6.) The investigator ultimately found Anderson's allegations to be "[unsubstantiated] [a]bsent witness corroboration or other evidence of culpability." (Def.'s Ex. 18 at 3.)

Anderson successfully completed his PIP on December 18, 2019. (Def.'s SUMF ¶ 83.) He requested to transfer three more times after he completed his PIP and was rejected each time. (Anderson Dep. at 351-52.)

Today, Anderson remains employed by Lowe's as an ASM at Store 2378 and has not

applied for an internal transfer within the last six months. (Def.'s SUMF ¶¶ 84-85.) He received several bonuses and raises since he was taken off the PIP, including a salary increase from $71,173.44 to $74,775.00 in 2021. (*Id.* ¶ 91; Def.'s Ex. 1 ¶¶ 19-21.) Anderson still suffers from anxiety and has stress-induced nightmares four or five days a week, but he is no longer under a doctor's care or taking anxiety medication, and he has not seen a doctor for any mental health condition since July 2019. (Def.'s SUMF ¶¶ 42-43; Anderson Dep. at 18-19, 358-59.) At some point in 2019 or 2020, Store 2378 was provided a security officer, which Anderson has found to be "a tremendous help" both in curbing violence in Store 2378 and mollifying his stress. (Anderson Dep. at 21-22.) Anderson also began working under a new supervisor at some point after December 2019, with whom he has an "[e]xtremely good" working relationship. (*Id.* at 387.) Anderson testified that he "love[s] [his] job at Lowe's" and he does not "have an issue with Lowe's currently." (*Id.* at 349.)

## II.     PROCEDURAL HISTORY

The Equal Employment Opportunity Commission issued Anderson a right to sue letter on March 1, 2021. (Compl. Ex. A.) Anderson timely filed suit against Lowe's on May 19, 2021. Lowe's answered Anderson's Complaint on July 19, 2021 and moved for summary judgment on March 17, 2022. Anderson responded to Lowe's motion on April 14, 2022, and Lowe's replied on April 21, 2022. On April 26, 2022, the Court issued a stay of the remaining deadlines in this action pending its ruling on the instant summary judgment motion.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that

could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of showing that the record reveals no genuine issue as to any material fact. *Anderson*, 477 U.S. at 256. When the moving party does not bear the burden of persuasion at trial, the moving party may meet this burden by showing that the non-moving party's evidence is insufficient to carry its burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable jury to find for him at trial. *Anderson*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) (citing *Anderson*, 477 U.S. at 254-55).

## IV.   DISCUSSION

Lowe's moves for summary judgment on all four counts of the Complaint. Count One asserts a Title VII race discrimination claim; Count Two asserts both ADA failure to accommodate and disability-based hostile work environment claims; Count Three asserts a FMLA retaliation claim; and Count Four asserts several PHRA claims. For the following reasons, the Court will grant summary judgment as to Count One, Count Two's hostile work environment claim, Count

9

Three, and Count Four to the extent it raises any claim aside from a failure to accommodate claim. The Court will deny summary judgment as to Count Two's failure to accommodate claim and Count Four to the extent it raises a failure to accommodate claim.

### A. Race Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis on race. 42 U.S.C. § 2000e-2. Claims of race discrimination under Title VII are subject to the *McDonnell Douglas* burden-shifting framework. Under this framework, an employee first "carr[ies] the initial burden . . . of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie claim of discrimination, an employee "must show that: (1) [he] is a member of a protected class, (2) [he] was qualified for the position [he] sought to attain or retain, (3) [he] suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). If the employee succeeds in establishing a *prima facie* claim, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *McDonnell Douglas*, 411 U.S. at 802; *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The employer satisfies this burden "by introducing evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable [action]." *Fuentes*, 32 F.3d at 764. "The employer need not prove that the tendered reason actually motivated its behavior." *Id.*

If the employer articulates such a reason, the employee must then demonstrate that the employer's "stated reason . . . was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. An employee "can demonstrate pretext and defeat summary judgment by pointing to evidence from

which a jury could reasonably (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 649 (E.D. Pa. 2021) (quoting *Norman v. Kmart Corp.*, 485 F. App'x 591, 593 (3d Cir. 2012)). In doing so, the employee must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" to show that they were pretext. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998) (quoting *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

Here, Anderson's race discrimination claim fails as a matter of law because he has not identified any evidence from which a jury could reasonably infer that Lowe's treated Anderson differently than non-Black employees and either placed him on a PIP or denied his May 2019 transfer request because of his race. *See Branch*, 554 F. Supp. 3d at 649 (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003)) ("The central focus of the fourth element is whether the employer is treating some people less favorably than others because of their race . . .").

Anderson believes that two sets of evidence support an inference of discrimination: the purported involvement of Wilson in the decisions to place Anderson on a PIP and deny his transfer request, and the fact that multiple White ASMs successfully transferred from Store 2378 while he was unable to do so. However, even if the Court were to find that Anderson's placement on a PIP or denial of transfer constitute adverse employment actions[3]—a proposition for which Anderson

---

[3] The Court notes that denials of transfers as adverse employment actions are treated somewhat differently in the context of Title VII and ADA failure to accommodate claims. In the latter context, and as discussed below, an employer's failure to accommodate its employee's disability is sufficient on its own to constitute an adverse employment action; here, Anderson argues that Lowe's failed to accommodate his anxiety by denying his request to transfer to another store. In the Title VII context, however, denials of transfers are not necessarily adverse employment actions, and Anderson has made no attempt to argue that his denial fits the bill here.

has cited no case law in support in his submissions—Anderson has not adduced any evidence tying either of these actions to his race. As such, he has failed to satisfy his *prima facie* burden.

First, Anderson has failed to demonstrate that Wilson considered Anderson's race in either placing him on a PIP or blocking his May 2019 transfer to the extent he was involved in either of those decisions. The parties dispute Wilson's involvement. Lowe's asserts that Wilson was not involved in the decision to place Anderson on a PIP at all and was never even aware that Anderson was placed on a PIP. (Def.'s SUMF ¶¶ 63-64.) Anderson, meanwhile, maintains that issuing a PIP to an ASM "rose to a level of likely involvement by [] Wilson." (Pl.'s SDF ¶¶ 63-64.) Lowe's also asserts that neither Gurk nor De Villava consulted Wilson when reviewing Anderson's transfer request, while Anderson maintains that Wilson personally denied Anderson's transfer request in retaliation for Anderson's May 2019 internal complaint against Khan. (Def.'s SUMF ¶¶ 53-54; Pl.'s SDF ¶¶ 53-54.)

However, neither dispute rises to the level of a genuine issue of a material fact because, even if Wilson was involved in placing Anderson on a PIP or denying his transfer request, Anderson still has not demonstrated that his race factored into either decision. It is undisputed that Wilson has never made any disparaging comments about Anderson's or others' race to or around him. (Def.'s SUMF ¶ 23.) Despite arguing that Wilson had an agenda to replace Black employees with White employees, Anderson testified that he had no direct knowledge of any such plan, let alone that Wilson played any role in selecting employees for hire at Store 2378 at all. (Anderson Dep. at 197, 199-200.) Anderson further testified that he knows of "nobody who can vouch and say that [Wilson] made a racial statement," and that, although it "was widely known that [Wilson] wasn't happy with the [Store 2378] team, [] no one stated racism" as one of the reasons for his

---

*See, e.g.*, *Easter v. Grassi*, 51 F. App'x 84, 86 (3d Cir. 2002); *Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys.*, 791 F. Supp. 2d 332, 338 (W.D.N.Y. 2011).

unhappiness. (*Id.* at 199-200, 202.)

Second, Anderson has not demonstrated that similarly situated individuals who were not members of his protected class were treated more favorably treated than he was. *See Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 430 (W.D. Pa. 2014) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). To be valid comparators, employees need not be "identically situated," but they must be similar in "all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x. 220, 223 (3d Cir. 2009). Some of the factors to be considered in determining whether employees are valid comparators include whether the employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011). "As a general rule, whether individuals are similarly situated is a factual question for the jury. However, a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Hampshire v. Bard*, 793 F. App'x 75, 80 (3d Cir. 2019).

Anderson argues that Derle, Pratta, Goos, and Kelly—who were all, at one point, White ASMs at Store 2378—constitute valid comparators, and that they were able to transfer while he was not. But the Court finds that they are not valid comparators because none were similarly situated to Anderson. At the time of his May 2019 transfer request, Anderson's supervisor was De Villava, but Pratta, Derle, and Goos' supervisors would not have been De Villava, since they all successfully transferred in late 2018 and De Villava joined Lowe's in May 2019. Indeed, a different supervisor provided each ASM's evaluation that most recently predated their transfer. While Anderson's 2018 evaluation was provided by Wheeler, Derle's 2018 evaluation was

provided by Frank Vegliante, Pratta's 2018 evaluation was provided by Carl Guastavino, Goos'
2018 evaluation was provided by Joseph Raggio, and Kelly's 2019 evaluation was provided by De
Villava. (Def.'s Exs. 9, 12-15.) Although De Villava supervised Kelly at the time of his transfer
request, Kelly transferred nearly one-and-a-half years after Anderson's May 2019 request and due
to the death of his wife, leaving Lowe's entirely shortly thereafter. (*See* Anderson Dep. at 353-56.)
Further, without opining on whether Anderson's specific transfer request was actually denied on
the basis of his 2018 performance, the Court notes that Pratta, Derle, Goos, and Kelly all received
higher ratings than Anderson in the evaluations that most recently predated their successful
transfers. While Anderson received a rating of "inconsistent," Derle and Pratta received ratings of
"solid," Goos received a rating of "leading," and Kelly received a rating of "exceeds expectations."
(Def.'s Exs. 9, 12-15.) Moreover, Brown, a Black ASM at Store 2378 who was a "strong
performer," successfully transferred approximately one month before Anderson's May 2019
request. (Def.'s SUMF ¶¶ 55-56.)

Because Anderson has not identified sufficient evidence to make out a *prima facie* case of
race discrimination, Lowe's motion for summary judgment is granted with respect to Count One.

### B.    Disability Discrimination

The ADA prohibits employment discrimination on the basis of disability. 42 U.S.C.
§ 12112(a). Anderson asserts two ADA discrimination claims: that Lowe's failed to accommodate
his disability, and that he faced a hostile work environment stemming from his coworkers allegedly
subjecting to him to disability-related mistreatment. The Court addresses each in turn.

### 1.    Failure to Accommodate

To establish disability discrimination under the ADA for an employer's failure to provide
an employee with a reasonable accommodation, an employee must show that: (1) he was a disabled

14

person within the meaning of the ADA; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by his employer; and (3) he has suffered an otherwise adverse employment action as a result of discrimination. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). An "adverse employment action as a result of discrimination" in this context includes an employer refusing to accommodate an employee's disability. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009); *Solomon v. Sch. Dist. of Phila.*, 882 F. Supp. 2d 766, 776 (E.D. Pa. 2012) (citing *Gaul*, 134 F.3d at 579). This occurs when an employer "does not make reasonable accommodations to the known physical or mental limitations of the employee unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). Because failure to accommodate claims do not require that an employer's action be motivated by a discriminatory animus directed at the disability, the *McDonnell Douglas* burden-shifting framework does not apply. *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 595 (E.D. Pa. 2017).

Here, the Court will deny summary judgment on Anderson's failure to accommodate claim. Despite Lowe's assertions to the contrary, the Court finds that Anderson has presented sufficient evidence from which a jury might determine that he is a disabled person within the meaning of the ADA. The Court also finds that there remains a genuine issue of material fact regarding the reasons why Anderson's May 2019 transfer request—Anderson's requested accommodation—was denied.

First, although Lowe's disputes that Anderson had a disability, the Court finds that a reasonable jury could conclude that Anderson was a disabled person as prescribed by the ADA. Under the ADA, a person is "disabled" when he has "a physical or mental impairment that

substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Whether an individual is substantially limited in performing a major life activity is an individualized assessment. *Williams*, 380 F.3d at 763; 29 C.F.R. § 1630.2(j)(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1); *Sowell v. Kelly Servs.*, 139 F. Supp. 3d 684, 698-99 (E.D. Pa. 2015).

Here, the record demonstrates that Anderson's anxiety—which was brought on by working at Lowe's—substantially limited his abilities to sleep and work. Anderson testified extensively to experiencing severe, stress-induced nightmares beginning in 2018 because he was "work[ing] [] in a very high stressed environment" where "people can be volatile," and his first nightmares came following "a spike . . . it was getting more violent [with] more interactions with people that unfortunately could be life-threatening." (Anderson Dep. at 17-20.) He testified to feeling "high pressure" because his job required him "to make business decisions every day" while also "dealing with people" and "uncertain situations that could erupt at any given time." (*Id.* at 20.) Lowe's oblique claims that Anderson "does not argue or present evidence that his anxiety exists apart from his experiences being in his specific work setting" ignore that Lowe's *itself* ultimately referred Anderson to a psychiatrist given his condition's impact on his work. (*Id.* at 359-60; Mem. of Law In Supp. Of Lowe's Mot. For Summ. J. [Def.'s Mem.] at 19.) This Lowe's-sanctioned psychiatrist ultimately diagnosed Anderson with anxiety, and he soon after took a two-month FMLA leave from work. Although Lowe's invokes Anderson's testimony showing that he is no longer being

16

treated for any mental condition, Lowe's concedes that what truly matters to demonstrate Anderson's disability is whether he "was disabled or regarded as disabled in July of 2019." (Def.'s Mem. at 20.) And for what it is worth, Anderson has testified that he still suffers from anxiety and "sleeping disorders" to this day, facing "extreme nightmare[s] that [] could be violent" once a month, and an "inability to sleep . . . four, five days a week." (Anderson Dep. at 16-18, 358-59.) Anderson has thus adduced evidence that would permit a reasonable jury to conclude that he was disabled within the meaning of the ADA, precluding summary judgment on this ground.

Second, the Court finds that there is a genuine issue of material fact regarding the reason for Lowe's denial of Anderson's transfer request. Lowe's insists that it was because it "maintains a policy that precludes employees from transferring to another store location while they are on a PIP." (*See* Def.'s Mem. at 15.) But the Court's review of the record has uncovered several inconsistencies with this theory. Glaringly, neither party has provided the Court with a concrete, record-supported date on which Anderson asked for a transfer upon his return from leave. In both the Complaint and his opposition brief, Anderson states that he requested his transfer on August 12, 2019, but he does not provide a corresponding citation to the record in support. (*See* Compl. ¶ 14; Pl.'s Opp. To Def.'s Mot. For Summ. J. at 3.) Lowe's does not provide a specific date at all, only stating that Anderson requested a transfer "upon his return to work" following his FMLA leave, which Anderson admitted. (Def.'s SUMF ¶ 49; Pl.'s SDMF ¶ 49.) Lowe's narrowed this time period to "late July/early August of 2019" in its supporting brief, but it did provide a record citation in support. (Def.'s Mem. at 36.)

In any event, regardless of the specific date on which he requested a transfer, it is much more likely than not that Anderson requested a transfer prior to his August 19, 2019 placement on a PIP—which makes Lowe's repeated insistence that Anderson was denied a transfer *because of*

17

his PIP all the more puzzling. (*See, e.g.*, Def.'s Mem. at 13 ("It was the PIP, and not his protected status, that impacted his ability to transfer to another store location in 2019."); 15 ("Lowe's has also provided a legitimate, nondiscriminatory reason for the denial of his transfer request, *i.e.*, that it maintains a policy that precludes employees from transferring to another store location while they are on a PIP."); 25 ("[Anderson's] PIP made him ineligible for a transfer."); 32 ("Lowe's proffered reason for denying his transfer request—namely, that he was on a PIP.").)

If Anderson was not on a PIP at the time he requested a transfer, then it cannot be the reason for Lowe's denial of that request. And even if Anderson were on a PIP, the decision to grant his transfer request would still rest within the discretion of Lowe's management; placement on a PIP does not serve as an automatic bar to transfer. It is undisputed that Lowe's Employment Policy states that employees who are "on a Performance Improvement Plan . . . *may* be ineligible for consideration" for internal positions. (Def.'s SUMF ¶ 5 (emphasis added); Def.'s Ex. 5 (same).) Lowe's has not clearly set forth a record-supported explanation as to why management, in its discretion, denied Anderson's transfer request, beyond the dubious contention that it was because of his PIP.

Further, Lowe's argument that summary judgment is proper because Anderson failed to provide Lowe's with notice of his disability and a request for accommodation is unavailing. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010). The Court finds that a reasonable jury could conclude that Lowe's was on notice of Anderson's anxiety and corresponding request for accommodation given that Lowe's referred him to a psychiatrist and granted him two months of FMLA leave, and since Anderson told De Villava and Gurk that his transfer request—*i.e.*, his accommodation request—was "stress-related" and stemmed from Store 2378's volatile environment "taking a toll on [him] [] from an emotional standpoint." (Anderson Dep. at 269-70.)

Moreover, neither side has put forth any evidence demonstrating that Lowe's attempted to provide Anderson with a less-burdensome accommodation than transferring—but because Anderson's anxiety stems from interactions with Store 2378's clientele, it is not clear if an alternative accommodation exits. It is also not clear from the record what role, if any, Anderson's "inconsistent" 2018 performance played in the denial of his transfer request, particularly given that Anderson's anxiety was brought on by his work environment. In what appears to be an unfortunate, vicious cycle, Anderson's anxiety worsened his performance at work, while his work environment worsened his anxiety. In other words, a reasonable jury could find that working at Lowe's caused Anderson's anxiety to reach the point where his own company referred him to treatment and allowed him to take leave, but not only would not accommodate him when he returned, but also placed him on a PIP—making transfer that much more difficult, as Lowe's recognizes—mere days after he requested a transfer.

The actual reason for Anderson's denial of transfer is a disputed fact, and it must be determined by the jury. The jury must also determine whether Anderson was a disabled person within the meaning of the ADA at the time he requested his transfer. Consequently, summary judgment is denied as to Count Two's failure to accommodate claim.

2.    Hostile Work Environment

To state a hostile work environment claim under the ADA, an employee must prove that: (1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and (5) his employer knew or should have known of the harassment and failed to take prompt effective remedial action. *Walton v. Mental Health Ass'n*

*of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999). The ADA "does not make all harassment, or every unpleasant working environment, actionable under the law. Rather, the harassing conduct must be because of the [employee's] disability." *Barclay v. Amtrak*, 435 F. Supp. 2d 438, 448-49 (E.D. Pa. 2006), *aff'd*, 240 F. App'x 505 (3d Cir. 2007). Further, a hostile work environment requires conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 96 (3d Cir. 2020) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Here, the record does not evince any harassment toward Anderson on the part of Lowe's, let alone any based on Anderson's anxiety or transfer request. In his submissions, Anderson has failed to identify any specific actions on the part of Lowe's or its employees that purportedly form the basis of this claim. The Court's independent review of the record has similarly turned up nothing of this sort. In fact, Anderson testified that his coworkers never made any comments about his anxiety, and that he did not feel as though he was treated any differently because of it. (Anderson Dep. at 370.) Indeed, aside from his 2018 altercation with Khan—who left Lowe's shortly after Anderson took FMLA leave in May 2019—the record is replete with instances in which Anderson interacted amiably and cordially with his coworkers. That Store 2378's customers disrupted operations does not suffice to maintain a hostile work environment claim against Lowe's.

Summary judgment is therefore granted as to Count Two's hostile work environment claim.

### C. FMLA Retaliation

The FMLA prohibits employers from "discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

20

FMLA retaliation claims are reviewed under the familiar *McDonnell Douglas* burden-shifting framework. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 304 (3d Cir. 2012). To prevail, Anderson must first establish a *prima facie* case of retaliation by showing that: (1) he invoked his right to FMLA-qualifying leave; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to his invocation of rights. *Id.* at 301-02. If he can do so, the burden shifts to Lowe's to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *Id.* at 302. If Lowe's can do so, the burden shifts back to Anderson to offer evidence that the proffered justification is mere pretext. *Id.* (citing *Fuentes*, 32 F.3d at 764).

Here, like his race discrimination claim, Anderson has cited to no case law in support of the proposition that the denial of his transfer request or placement on a PIP constitute adverse employment actions. But, again, even if the Court were to consider them as such, Anderson's FMLA retaliation claim similarly suffers from his failure to adduce evidence causally relating those actions to his invocation of FMLA rights. It is undisputed that Anderson easily obtained a two-month FMLA leave and that he was reinstated to his same ASM position on a full-time basis with no dock in pay upon his return to Lowe's. (Def.'s SUMF ¶¶ 37, 44, 47.) It is also undisputed that Anderson received no pushback or questioning regarding his leave and that no one from Lowe's made negative comments about Anderson's use of FMLA leave or the length of his leave. (*Id.* ¶¶ 45-46; Anderson Dep. at 270.) Without any evidence to the contrary, Anderson has failed to show, as required to substantiate a *prima facia* case of FMLA retaliation, that he was punished in retaliation for taking FMLA leave.

Summary judgment is therefore granted as to Count Three.

**D.    PHRA Violations**

Count Four of Anderson's Complaint asserts several violations of the PHRA. As a general

matter, "[c]laims of race-based employment discrimination under . . . Title VII [] and the PHRA are analyzed coextensively." *Lara v. Samuel Adams Pa. Brewing Co., LLC*, Civ. A. No. 20-498, 2020 WL 5211206, at *7 (E.D. Pa. Sept. 1, 2020) (collecting cases). Additionally, the "analysis of an ADA claim applies equally to a PHRA claim." *Taylor*, 184 F.3d at 306 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *see also Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 328 n.8 (E.D. Pa. 2018).

Accordingly, to the extent Anderson asserts a violation of the PHRA on the basis of Lowe's failure to accommodate his disability, the Court denies Lowe's motion for summary judgment for the reasons stated above in connection with Count Two. To the extent Anderson asserts a violation of the PHRA on the basis of any other claim or theory of liability, the Court grants Lowe's motion for summary judgment.

## V.    CONCLUSION

For the reasons discussed above, the Court denies Lowe's motion for summary judgment as to Count Two's failure to accommodate claim and to the extent Count Four asserts a failure to accommodate claim under the PHRA. The Court grants Lowe's motion for summary judgment on Counts One and Three, as well as Count Two's hostile work environment claim and Count Four to the extent Anderson asserts any other claim or theory of liability under the PHRA. The Court further declines to foreclose the availability of punitive damages at this time and will reserve all damages-related issues for trial. An Order consistent with this Memorandum will be docketed separately.